oral argument is not to exceed 15 minutes per side. Ms. Sevier, you may proceed for the appellant. Good morning. Karen Sevier with the Federal Public Defender's Office on behalf of appellant Troy Huff. I'd like to reserve three minutes for rebuttal. This court should reverse the district court's denial of Mr. Huff's motion to suppress because the circumstances leading up to the search of Mr. Huff's vehicle did not amount to probable cause. This is a totality of the circumstances analysis and we recognize that the standard of review here is a mixed application of de novo on legal conclusions and clear error on factual determinations. The totality of the circumstances can be divided into two threads. The first thread of the analysis is the buildup to the stop and seizure of Mr. Huff and his vehicle. The second thread is the subsequent canine sniff and alert on the vehicle. Our position is that neither thread satisfies the probable cause standard taken individually or collectively. With respect to the first thread, the facts leading up to the deployment of the canine, what we have here is a tip from two informants that Mr. Huff sells methamphetamine and carries a gun. The tips are spaced by a few months and the first tip is from an individual named Brandi Young, an inmate at a county jail looking to reduce her jail time. The tip is conveyed to an officer named Deputy Kahn, the director of the Cumberland Drug Task Force, and the record is undisputed that he conducts no investigation into this first tip. The second tip comes from a similarly situated informant working off a case from the outside with the hopes of becoming a paid informant. The second tip about Mr. Huff is conveyed to an officer named Deputy Dennis, who then conveys that information back to the first officer, Director Kahn, and the two officers decide on the spot to set up what they refer to as a buy-bust with Mr. Huff. So that same day, the CI sends Facebook messages to Mr. Huff saying she wants to purchase an ounce of meth. He tells her and she conveys to law enforcement that Mr. Huff agreed to sell her the meth and would be arriving at a place called Hicks Gas Station in a white Hyundai. Did she show the officers something from Facebook that verified that there was going to be a meeting to sell drugs? That's correct, Judge Seiler. The informant sent screenshots over to the deputy showing that there had been communications on Facebook between herself and somebody purporting to be Mr. Huff on Facebook arranging for the sale of methamphetamine and that he would be arriving in a white Hyundai. So those communications were screenshotted and sent to the deputy. And when Mr. Huff arrives at the gas station, not in a white Hyundai, and although no drug transaction or illegal act is observed by law enforcement, Director Kahn executes a stop of Mr. Huff. He detains him. He questions him. He pats him down outside of his vehicle, and importantly, neither the questioning nor the search of his body yields anything incriminating. Did they recognize him from the screenshots that the informant gave the police? Your Honor, the record shows that Director Kahn recognized Mr. Huff through his license, that he had his license picture up on the screen. So he shows up and he's in a different car. But other than that, everything the informant said checked out, right? Yes, and the only information that the informant… So why isn't that enough for at least a Terry stop? Your Honor, that's an excellent question. We are not disputing that that is not enough for a Terry stop. Okay, so you have a Terry stop. Once you have a Terry stop, you can bring a police dog to do a sniff, can you not? Yes, Your Honor, as long as that's not a prolonged detention and we're not arguing that it was. You argue it was? We are not arguing that it was a prolonged detention. Okay, so the stop's okay, the dog's okay, the dog alerts. Why isn't there probable cause to search? Well, there isn't probable cause for the search for two reasons, Your Honor. Number one, the district court clearly erred in determining that the facts leading up to that stop, to that Terry stop, actually constituted probable cause and was in and of itself enough to search the car. Okay, so if you divorce the sniff, the dog sniff, from everything else, you say there's not probable cause to search the car. So, that's the position? Correct, Your Honor, and so our position is that there isn't probable cause collectively on either front, so there wasn't probable cause based on what the- Okay, all right, so you're saying the dog sniff has to be valid for probable cause, and I recognize that there was an error rate with the dog, but they explain that there's false positives from drugs having been in the car that are not any longer in the car, which seems plausible, and then I guess your other argument is that the dog's certification had expired, but is there a requirement under Tennessee law for police dogs to be certified? Based on the record, the officers testified that there is no certification requirement. Nonetheless, certification- Well, you can tell me whether Tennessee law has a requirement. There is not a requirement, Your Honor. Okay, so, all right, so that goes to the weight of the dog sniff, I guess, as opposed to the admissibility? That's our argument, Your Honor, is that it goes towards the weight and the totality of the circumstances analysis, which is required under Florida v. Harris. So our position is that there was not probable cause in this case based on the drug sniff because the drug dog itself was unreliable based on a number of problems. So there are essentially four problems that we've identified with this drug dog's reliability. One, Judge Griffin, Your Honor, has already identified, and that was the 25% error rate. The other problem with the drug dog, which Your Honor also identified, was that her certification had lapsed, so she wasn't properly certified at the time, and we recognize that that was not a requirement under state law at the time. And the third reason why we have problems or take issue with the reliability of the dog is that Dunya did not alert in the manner in which she normally does. And this was a proper consideration for the court. Instead of sitting down, which the officer testified that she normally does, she instead barked in an excited fashion. And the handler's explanation that this was a proper alert was that this was indicative of a sensory overload because of the overpowering smell of drugs. However, our position is that that theory was undermined by trial counsel who demonstrated that Dunya, this drug dog, was barking in that same excited fashion when she was still positioned in the police cruiser, and we can see that at page ID 162. The police did not stop the car. The car pulled into this store and stopped, right? Judge Siler, that's exactly right. That's correct, Judge Siler. Well, they could certainly go up to the car and look in, but that's not what happened here. They executed a Terry stop. They surrounded this car with their lights flashing. They detained Mr. Huff. They held him. They searched him. They questioned him. So the actions of the officer certainly constitute a seizure and stop of this vehicle under Terry. But the issue here is that the district court viewed those circumstances as amounting to not just reasonable suspicion but probable cause to actually search the vehicle, and we believe that that was clearly erroneous under the facts. Where did they find the meth and the weapon? Were they concealed someplace or what? The weapon was found in the center console of the vehicle, and the drugs were found in a safe. So after they got the alert on the car, they searched the car. They found the gun in the console, and they opened up the safe with the assistance of Mr. Huff, I believe, in terms of a code, and that's where they found the drugs. Well, if the dog sniff is valid and can be considered, I think there's no doubt you've got probable cause. But if we kind of put the dog sniff to the side and looked at the other evidence that they had, that they have an informant who I think had reliable information in the past who said that I'm going to be buying drugs from this person from their car at a location, it checks out everything except the type of car that your client is driving. Why isn't all that information enough in itself to establish probable cause to search the vehicle for drugs? Your Honor, our position is that the circumstances here with this, what we view as an uncorroborated tip. But it is corroborated because Mr. Huff does go where the informant says he's going to go and does meet the informant, and also, I mean, that's all consistent with the screenshots that they showed the police that they said, I've negotiated to buy drugs at this location from this person. It all checks out. I mean, why isn't it probable cause that, hey, there's probable cause. There's drugs in that vehicle, and he's going to be selling them to them? Your Honor, I think that the case, the United States v. Stokes case, is instructive in answering that question. In that case, we had an informant conveying in real-time, real-time observations to law enforcement that the defendant was in possession of methamphetamine. The informant there personally observed Mr. Stokes in possession of six ounces of methamphetamine and personally observed $100,000 as he was leaving a horse track in a blue Ford pickup. The informant in that case conveys to law enforcement what this criminal activity that he is observing in real-time provides the correct identifying information regarding the perpetrator here, and then they execute the stop shortly thereafter and recover the drugs. Like here, the informant in Stokes was a known informant, previously found to be reliable, but unlike here, the informant in Stokes conveyed real-time observations of contraband and criminal activity. And on those facts, Your Honor, more robust than what we have here with Mr. Huff, the court made a point to state that the totality of the circumstances barely got the government over the goal line. And to quote from that opinion, without a lot of breathing room. And so like I argued in my reply brief, if those facts barely got the government over the probable cause hurdle in Stokes, the government is barely at the 50-yard line here where we are missing real-time observation of criminal activity before the search of the vehicle and corroborating facts like the defendant being in the car that the informant claimed he would be in. But the informant said that your client kept his meth in a safe in the car, right? And there was a safe in this car. That's kind of strange. And even though it's a perfect right to have a safe in a car, but it's unusual. I don't see too many safes in cars, but maybe I don't go in the right cars. But anyway, what about that? Isn't that some kind of an idea that the informant knows what he's talking about? Well, Judge Seiler, I mean, that's post hoc information that we have now to reflect on. Yes, there was, in fact, a safe in the car that contained the drugs. But the objective facts known to police officers prior to the search of the car, certainly there was no corroborating evidence that they had found to support the informant's position that this individual kept a safe in the car. They did no investigation leading up to this by-bust. And we can see the type of corroboration that the Sixth Circuit has found to be sufficient in Arnold. In United States v. Arnold, the police independently investigated and verified the informant's tip by looking into the address of the suspect, making sure that this individual was on parole like the informant claimed him to be. So they investigated all of the informant's allegations, including the type of car that the suspect drove and where he drove it. They even went to the street that the informant had alleged that he was on, which was Francis Street. So they did all of this buildup investigation. They got corroborating information. And only then did they conduct a by-bust. And we are lacking that type of corroboration here. Did you see that safe from outside the car, or did you have to get in the car and look under something? You know, I didn't see that in the record. I don't recall seeing that in the record either, Judge Seiler. I don't believe that they observed the safe from outside the vehicle prior to the search of the car. But they did find the safe in the car, right? That is correct. And he opened it up for them? I don't believe that he opened it up for him, but they asked for the code to the safe. Okay. All right, well, you're from the government. Thank you.  Good morning, and may it please the court. Brendan Gantz for the United States. The easiest way to resolve this case would be to hold that based on all the circumstances known to the police officers at the time they searched Mr. Huff's vehicle, they had probable cause to do so. Indeed, the officers here had probable cause twice over. First, even before K-9 Dunya alerted to the odor of narcotics in Mr. Huff's car, the officers had probable cause based on the informant's tips and corroborating circumstances, including because the CI had previously given reliable information in multiple cases that led to the discovery of drugs, and because they saw in real time Mr. Huff's incriminating messages with the CI, messages in which he agreed to sell her an ounce for $500 and told her to come alone. Second, under Florida v. Harris and this court's precedent, K-9 Dunya's alert independently provided probable cause because the district court's finding that Dunya was reliable was not clearly erroneous. These independent and mutually reinforcing probable cause showings were more than sufficient to meet the probable cause standard, and Mr. Huff's contrary arguments are simply not supported by the law or by the facts of this case. I want to address a few of the points that my friend on the other side made in opening. First, as to the facts regarding K-9 Dunya's alert, my friend on the other side said that the dog didn't alert in the manner that she normally does. Now, Deputy Dennis testified that Dunya, when she alerts, it's a change in behavior and that she normally sits, but that in certain cases she will bark excitedly based on the amount of drugs in the vehicle. And when she does that, her reliability rate is higher. Now, in this case, K-9 Dunya both barked and sat, and that's what Deputy Dennis testified. But the fact that the dog gave an alert that was even more reliable than it usually is with this particular dog only further supports the probable cause showing. And although it is true that Deputy Dennis testified that the dog also sometimes barks when he's in the police cruiser, for example, when he activates the blue lights, when the blue lights are activated, it's also clear from the record Deputy Dennis testified, and you can see this in the video, that after initially barking when the stop started, K-9 Dunya then became calm and quiet as the police questioned Mr. Huff. And by the time they got the dog out of the car, the dog was calm. Now, the other points I want to address are the Stokes and Arnold cases that my friend on the other side cited. Now, in Stokes, it's important first to point out that Stokes was primarily a case about the reliability of the informants and not the corroboration. The CI in Stokes had one prior instance of successful cooperation and was known to the police, and this court's decision relied mostly on the reliability of a known informant who has provided successful information in the past. Here, of course, we have two informants, and one of them has not just one but multiple instances of prior successful corroboration. And additionally, there is far more meaningful corroboration here than there was in Stokes. The corroboration points that Mr. Huff highlights in Stokes are points that this court said in that decision had little probative value. The informant's specificity regarding the amount of drugs and currency, for example, was something this court said provided only, quote, marginally more reliability than a vague report of criminality or contraband. And in Stokes, the details the informant provided that the defendant was at Kentucky Downs in a blue Ford pickup truck, as this court said, consisted of, quote, relatively easy to know and innocuous facts. And the court said the value of that input standing alone was low. Here we have an informant who conveyed in real time not only her own observations, as in Stokes, but her communications with Huff and even provided proof in the form of messages that showed his side of the conversation as well as hers. Messages to which his name and Facebook profile picture were attached. As the district court put it, those messages contemporaneously confirmed all details, and Huff's arrival at a location where he had agreed to sell drugs to the CI was obviously more corroborative than the mere fact that the officers in Stokes had seen the defendant in a blue Ford pickup at Kentucky Downs. And they met at a kind of a country store, right? Yes, it was a convenience store. And that was set up in advance, even though the defendant had a different car or truck. In this case, the CI did set up the by bus through her messages with Mr. Huff. And her messages with Mr. Huff also showed that the information about the car that he was driving came directly from him. He was the one who told the CI that he would be in a white Hyundai. So the fact that he arrived in a different car didn't cast doubt on the reliability of the CI because she predicted something that wasn't true. It was simply that he told her a fact that turned out not to be true. But once Director Kahn saw Mr. Huff and was able to visually identify him from his picture, the kind of car that he was driving was irrelevant to the probable cause showing. Finally, my friend on the other side cited the Arnold case. It's important to start by noting that Arnold found probable cause, and nothing in that opinion suggests that it was even a close call. Arnold also involved an anonymous tip, not a known informant with a track record of reliability. And this court's case law has consistently emphasized the importance of that distinction. In Arnold, police stopped the defendant after seeing him driving in the direction of a proposed drug deal that had been set up. Whereas here, of course, the officers waited until Mr. Huff arrived at the agreed location and parked next to the CI's car, driver's side door to driver's side door. The additional corroboration that Mr. Huff seems to suggest the officers should have done, for example, identifying his car or the location where he was selling drugs, was simply not possible given Mr. Huff's method of drug dealing. Mr. Huff, as Brandy Young said, sold drugs out of rented vehicles and kept the drugs in a safe in his car. So there was no way for the police, as in some of the other cases that Mr. Huff cites, to go to a specific location and see him selling drugs in a particular car because that just wasn't the way that he operated. The police corroborated the information that they had from multiple informants here in the best way possible, which was by arranging the buy-bust. And the evidence supporting the probable cause showing in this case was overwhelming. For those reasons, this court should affirm. I have no questions. Counsel, do you know if there's anything in the record as to whether, following up on Judge Sauer's question to the Defendant's counsel, whether the safe or safes in the vehicle could be seen through the window of the car when the officer came up to the car? There was nothing in the record in the suppression hearing in the form of testimony that police saw the safe in plain view. So we've not been relying on the plain view exception or on that particular corroborating detail. We've relied instead on the dog sniff as well as the corroboration that the police had by the time that they searched the vehicle, which included, as I mentioned, Mr. Huff's communications that are highly incriminating, as well as his arrival at the buy-bust, the fact that he pulled up to the C.I. driver's side door at a driver's side door, which Director Kahn testified is consistent with other drug sales that he's seen and is an otherwise unusual way to park if you're simply going into a convenience store. And then after Director Kahn pulled up and activated the blue lights and they don't challenge the Terry stop, what happens between that and when the search was initiated was that Mr. Huff got out of his car, but then when Director Kahn identified himself as a drug task force agent, he turned around and started walking away. He told the police that he didn't know who the officer of the other car was, which was obviously false. And in addition to all of that corroboration, you have Brandy Young's tip as well as the C.I.'s tip. All right. Thank you. Thank you. We'll hear rebuttal at this time. Thank you. Briefly, I just want to make one point on rebuttal in relation to my friend's argument that there was probable cause independent of the canine stiff. I understand that the court is to base its assessment of probable cause based on objective facts, and it's to ignore the subjective intent of law enforcement. But it bears noting that even Director Wayne Kahn of Blake Cumberland Task Force, an officer with 27 years of experience, did not believe that he and Deputy Wayne had probable cause to search the vehicle. And can a lay person make a legal conclusion that's admissible evidence? Well, Your Honor, I mean, it's a conclusion based on the underlying facts known to the officers. No, no. It's what we do. We decide what probable cause is, don't we? And lay people can have all sorts of opinions as to probable cause, but it's a legal determination. And I see this all the time, that you'll ask a party to a case, well, would you agree with this legal principle? And the party of the case who has no law degree and will sometimes foolishly answer the question. But the officer's opinion whether or not he's got legal probable doesn't mean anything, does it? I mean, it's not even – it's not competent evidence. Well, his – setting aside his legal opinion – It's certainly not an admission. His opinion on what the basis was to search the vehicle – Oh, that's different. You're asking facts. But if you're asking conclusions of law, that's different. And that's kind of what you're relying on. Well, I think that defense – the trial counsel was asking, essentially, what was the basis for searching the vehicle. Well, all right. I agree with that. And I – This is the basis. These are the facts. And then you say, okay, now putting all those facts together, do you agree with me that you didn't have – that your Terry stop was some suspect or whatever had problems? No. If I were the counsel for the officer, I'd say do not answer the question. It's not a proper question. Okay. Be that as it may – I mean, I certainly understand. I do find it interesting that the officer with 27 years of experience believed that the basis for the stop was the drug sniff, was the drug alert, and that there was not sufficient basis to search that car based on the lead up. Even if he's wrong, if it was a legal stop and we find it a legal stop, whether he thought it was or not is irrelevant, isn't it? Yes, Your Honor. I mean, it's an objective. You started out. The Fourth Amendment analysis is an objective standard. Absolutely. It is an objective analysis, and I just found that to be particularly noteworthy, but I understand Your Honor's point. Very good. For all of the reasons that we stated in our brief and in argument today, we would ask the court to reverse the district court's decision. Thank you. Thank you. Thank you very much. And the case is submitted.